# Davis *v.* Evans.

### *Bill in Equity for Rescision of Contract.*

1. *Rescision of contract; what will not authorize.*—The purchaser of lands sold at public auction, in pursuance to an advertisement, which describes the tract sold as containing about fifty-six acres, is not entitled to a rescision of the contract of sale, because he was deceived or misled as to the real boundaries of the tract he was buying, when he fails to show that he did not receive the quantity he bid for, and when the land embraced between the real and supposed boundaries is not shown to have any special value as compared with the average of the tract purchased; and especially is this true, when the tract is shown to have on it a fine residence, and the land between the boundaries is shown to be without improvements, save a fence, and of comparatively little value.

2. *Same; what waives right to claim.*—If the purchaser of lands at such sale, after becoming aware of the misrepresentation, complies with his contract by paying the cash payment and giving notes for the deferred ones, he thereby waives his right to a rescision of the contract.

Appeal from Marengo Chancery Court.

Heard before Hon. Charles Turner.

On the 21st day of December, 1872, the appellee, Josiah T. Evans, as administrator with the will annexed, of Mary Bryan, sold at public auction, a certain piece of land belonging to said estate. This land was described in the advertisement for the sale as " all that part of the east half of the south-west quarter of section ten, in township sixteen, range two, east, in said county of Marengo, lying east of the road leading from Linden to Moscow (or Jefferson), known also

[Davis v. Evans.]

as the late residence of J. R. Bryan, deceased, but belonging to his mother, Mary Bryan, containing about fifty-six acres." The appellant, Matthews W. Davis, became the purchaser at the sale for the sum of thirty-seven hundred and ninety dollars, payable one-third cash and the balance in one and two years with interest from the day of sale, to be evidenced by notes with two approved sureties. Appellant, Davis, made the cash payment, executed his notes with F. P. Snedecor and A. J. Arrington as sureties for the deferred payments, and went into possession, and has remained in possession. Evans executed to him his bond for title. The notes for the deferred payment not being paid, the appellee brought suit on them against Davis and his sureties. Thereupon the appellant filed his bill, in which he alleged that on the day of the sale, because a bidder, and pending the sale, he, being a stranger, asked the appellee to show him the boundaries of the land, and that appellee then showed him " all the land lying between the Pin Hook road on the east, and the Linden and Moscow road on the west, and a certain fence on the north, all of which were plainly visible, and that Evans then stated that he was selling the land and improvements between the said roads." The bill further avers, that before the first of these notes fell due, the appellant discovered that the appellee " had made a misrepresentation of facts at the time of sale in regard to the boundaries of the land sold by him, and that a large portion of said land, to-wit, about twenty acres lying on the eastern side of tract, and included in and embraced by the boundaries pointed out by said Evans, did not belong to the estate of Mary Bryan, and that he had no right to sell the same, and could not then, and cannot now, make title thereto.

The bill then prayed that the sale be set aside, and that the cash payment made by appellant be refunded, or if the court was of opinion that the sale should stand, that a proper allowance should be made by way of abatement in the price, and that an injunction also be granted to restrain Evans from prosecuting his suit on the notes. The allegations of misrepresentations by Evans were flatly denied in the sworn answer required of him, and it was there set up that after the sale, and before the payment of the cash payment or the execution of notes sued on, Evans went with the appellant and showed him the exact lines of the place, and that he was then informed that there was a strip of land, inside of the enclosure, which did not belong to the estate. It was shown that the land in the enclosure, which did not belong to the estate of Mrs. Bryan, consisted of a narrow strip of land running along the road, and that there were no

[Davis v. Evans.]

improvements on it except a fence, which separated it from the road.  There was no evidence as to the value of this strip, as compared with the tract purchased by Davis at the sale, nor is there any proof of the quantity of land which Davis did get under his purchase.  Sandusky, a witness for appellee, testified that he acted as auctioneer at the sale in December, 1872, and that soon after Davis took possession, and early in 1873, that " he and Davis walked in the field on the eastern side of the place, and he, Davis, showed me where Dr. Evans had pointed out as about the eastern line," and "asked me if he should make a fence on the line." Other witnesses for the defendant testified to the fact that Davis knew, soon after his purchase, that the eastern boundary of his land did not reach the road.  A temporary injunction was granted on the filing of the bill.  On the final hearing, the Chancellor dissolved the injunction and dismissed the bill, and from that decree Davis appeals to this court.

WATTS & SONS, for appellant.—The weight of the testimony shows that Evans did have a conversation with Davis in regard to the boundaries, while the sale was going on, and that Evans did misrepresent the boundaries.  These representations constituted a fraud, whether Evans knew at the time they were false or not.—1 Brick. Dig. 688, § 705.  This evidence would clearly have authorized a rescision of the contract, if Davis had acted promptly after discovering the truth. It is said, however, that he has lost all right of complaint in equity, because he paid a portion of the purchase-money after he discovered the representations.  This is not a true proposition of law.  By doing any act after the discovery of the fraud, indicating an intention to stand by the terms of the contract, he may have forfeited his right to a rescision, but this would not prevent him from asserting his right, and insisting on an abatement of the purchase-money.—See 7 Ala. 742 ; 4 Ala. 21 ; 34 Ala. 663 ; 26 Grattan, 444 ; 1 Robt. (Va.) 287 ; 32 Ala. 410.

H. A. WOOLF, contra.—Equity requires diligence in the discovery and exposure of fraud, and a rescision sought on account of fraud must be made as soon as it is discovered, and a bill which discloses on its face a want of diligence is without equity.—40 Ala. 242 ; 38 Ala. 42 ; 34 Ala. 633 ; 31 Ala. 219.  The right of rescision is lost by affirmance or by failure to manifest an election.—29 Ala. 420 ; 2 St. 520.  The court is also cited to the following authorities :—9 Ala. 285 ; 23 Ala. 755 ; 33 Ala. 530 ; 45 Ala. 204 ; 37 Ala. 573 ; 42 Ala.

[Knighton et als. v. Curry et als.]

168 ; 29 Ala. 393 ; 33 Ala. 210 ; 1 Brick. Dig. pages 686, 688, 689, §§ 681, 682, 683, 716, 717, 718, 720, 721.

STONE, J.—The advertisement under which the lands in controversy were sold, describes the tract or lot as containing about 56 acres. It is not claimed, either in the pleadings or proof, that Davis, the purchaser, did not get the quantity represented, and sold to him. Neither is it averred or proved that the strip of land, which Davis alleges he lost, has any special value above, or even equal to the average of the tract he purchased. The proof is, that the lost strip is without improvements, other than a fence, and that it is of very little actual value. If the complainant were to recover the lands he claims, or the value of that part which lies outside of his boundary, he would evidently get in quantity more than he bargained for.

In addition to this want of specific averments of injury, there is indefiniteness and contrariety in the proof, as to the representations made by Evans. Sandusky testifies that about January, 1873, soon after Davis took possession, he, Davis, knew his eastern boundary did not reach the public road; and that he stated Evans had thus pointed out his line to him. Other witnesses speak of Davis' early knowledge of the strip between him and the road, which his bond for title did not embrace. Yet, he waited near three years after his purchase, and until he had been sued for the purchase-money, before he asserted he had been deceived by Evans' misrepresentation of the boundary. We think the complainant has failed, in every phase of his case, to make a case that would justify us in reversing the very careful decree of the Chancellor.—*Kelly v. Allen*, 34 Ala. 663 ; *Fore v. McKenzie*, Dec. Term, 1878.

Affirmed.

